# Southern Railway Co. v. Birmingham, Selma & New Orleans Railway Co.

## *Bill in Equity for an Injunction.*

1. *Ad quod damnum proceedings; land owner has right to have compensation assessed by jury.*—Under the constitution of 1875 (Constitution, 1875, Art. XIV, § 7), the owner of land across which a right of way is sought to be condemned, has the right to have his compensation assessed by a jury of twelve men, as a condition precedent to any taking of his property; and proceedings had in the probate court looking to the condemnation of the right of way over land, do not preclude the owner thereof from the right to have paid to him damages ascertained by a jury before the person seeking condemnation enters his land.

2. *Same; effect of appeal from decree of probate court.*—Where *ad quod damnum* proceedings are instituted in the probate court seeking the condemnation of the right of way for a railroad company, and damages are assessed by three commissioners, and the amount assessed is paid into the probate court, which court makes an order of condemnation, upon the land owner appealing to the circuit court under the provisions of the statute, the party seeking the condemnation can not by giving bond to pay such judgment as might be rendered on the appeal, (Code, §§ 1719-1721), enter and proceed to construct its road until the cause is tried upon appeal; the right to enter on the condemned property being postponed by reason of such appeal, until there was an assessment by a jury.

APPEAL from the Chancery Court of Dallas.

Tried before the Hon. THOMAS H. SMITH.

The bill in this case was filed by the appellee, Birmingham, Selma & New Orleans Railway Company, against appellant, Southern Railway Company, on the 25th day of March, 1901.

The averments of the bill are substantially that complainant owns a railroad and possesses the right of eminent domain; that it is extending its railroad in

Dallas county; that it has graded its railroad from Martin's Station to a point about fifteen miles west; that two miles westward from Martin's station its road crosses the track and right of way of the defendant's road, of which right of way of one hundred feet the defendant is in possession; that complainant has constructed its track up to the right of way of defendant; that on the other side of defendant's right of way complainant has constructed its track for about two miles; that when it had completed its track to defendant's right of way, that defendant objected to complainant crossing its said right of way and track; that thereupon complainant filed its application in the probate court of Dallas county for the condemnation of an easement to cross said track and right of way; that it prosecuted its application to a final judgment in said court; that said final judgment was rendered on the 25th day of February, 1901, that on the same day complainant paid into court the amount of damages assessed; than on the 19th day of March, 1901, said Southern Railway Company and the Mobile & Birmingham Railway Company filed their written notice of appeal to the circuit court of Dallas county, Alabama, from the assessment of damages and compensation in said probate court; that on the 20th day of March, 1901, complainant gave bond in the sum of $1,000 with sureties, which was approved by the probate judge, and conditioned to pay such judgment as might be rendered on said appeal from said assessment of compensation and damages; that the defendant now claims that by virtue of its appeal which it has taken from the assessment of damages and compensation against complainant in the proceedings in the probate court to the circuit court, the rights of the complainant to occupy and cross the right of way and track of the defendant under said proceedings of condemnation, have again been superseded, and the complainant has no right to enter upon or occupy the right of way so condemned to its, complainant's use, and has notified complainant, under such claim, not to occupy or enter upon any portion of its right of way or track; that if complainant undertakes to enter upon or occupy such right of way, pend-

ing said appeal, the defendant will, unless enjoined, undertake in a like manner heretofore adopted by it, to obstruct and prevent complainant from so entering upon its said right of way and track; that defendant obstructed said right of way; that defendant obstructed said right of way and track; that defendant obstructed complainant's right of way by building a spur track parallel with and lower than its, defendant's main track, and on its, defendant's said right of way. There are other averments going to show the manner, method and intent of defendant in so building its spur track along its right of way, whereby complainant was prevented from so crossing and building its said track, and that said defendant had refused to remove the same, and refused to allow complainant to cross until defendant's appeal was determined in the circuit court. The exhibits to the bill, which are made a part thereof, show that the decree of the probate court was rendered on February 25th, 1901; that on the same day the probate judge appointed three commissioners; that on the same day the sheriff notified said commissioners of their appointment; that on the same day they were sworn and proceeded to assess the damages and compensation; that on the same day they made their report; that on the same day the report was confirmed; that on the same day the final decree was made, and on the said day complainant paid into court the sum awarded by the commissioners, namely $2.25 to the Southern Railway, and $2.25 to the Mobile & Birmingham Railway Company. The exhibits further show that the condemnation proceedings were as well against the Mobile & Birmingham Railway Company as against defendant; that defendant and the Mobile & Birmingham Railway Company perfected their appeal from the assessment of damages and compensation on the 19th day of March, 1901, to the circuit court of Dallas county, and that on the 20th day of March, 1901, complainant gave bond for $1,000 conditioned as hereinbefore stated.

The prayer of the bill was for an injunction restraining defendants from in any manner interfering with complainant in constructing its said track across de-

fendant's right of way and track.    Upon the filing of
this bill the chancellor granted an injunction in con-
formity with its prayer.

The defendant, on March 29th, 1901, filed a motion
to dismiss the bill for want of equity; demurrers to the
bill, and a motion to dissolve the injunction upon the
motion to dismiss the bill for want of equity, and upon
the demurrers to the bill.

The demurrers raised the questions, 1, that no just
compensation has been made to defendant; 2, that the
bill shows no right of entry on or upon the property of
defendant; 3, that the averments show that defendant
had taken an appeal from the assessment of damages
and compensation to the circuit court of Dallas county,
Alabama; 4, that the averments of the bill show that
the assessment of compensation had been made by three
viewers and not by jury, according to law; 5, that the
bill shows that the defendant was given no notice by
the viewers or otherwise of the time and place that they
would proceed to ascertain and assess the damages and
compensation that defendant was entitled to, and that
the defendant had no opportunity to offer evidence
touching the amount of damages it would sustain, and
the amount of compensation it was entitled to; 6, that
the bill shows that the amount of compensation was as-
certained by viewers and not by a jury, as provided by
the constitution and laws of the State of Alabama; 7,
that the bill shows that the compensation that defend-
ant is entitled to, was not paid in money, but that com-
plainant had given bond for its payment; 8, the aver-
ments of the bill show that defendant had the legal
right to maintain and construct its side track as aver-
red in the bill; 9, that the averments of the bill show
that defendant had the legal right to forbid the com-
plainant from entering on or upon its right of way and
track.

On the submission of the cause upon the motion to
dismiss for the want of equity and the demurrers and
the motion to dissolve the injunction, the chancellor
rendered a decree overruling each of such motions and
overruling the demurrer.    From this decree the defend-
ant appeals, and assigns the rendition thereof as error.

PETTUS, JEFFRIES & PARTRIDGE, for appellant.—Our constitution requires just compensation to be paid before the taking, and it grants a right of appeal and a trial by jury to ascertain what is just compensation. Therefore, pending such appeal it is impossible even to determine what is just compensation. And the Legislature is prohibited from interfering with these rights.

The injunction in this cause should have been dissolved by the lower court. The appellee had no shadow of right to enter upon appellant's right of way until the 19th day of March, 1901, and that by reason of the filing of its bond as required by section 1720 of the Code. If the bond is not the payment contemplated by the constitution, *then the injunction should be dissolved.—Bir. Trac. Co. v. Bir. R. & E. Co.,* 119 Ala. 134; *M. & C. R. Co. v. B., S. & Tenn. R. Co.,* 96 Ala. 580; 6 Amer. & Eng. Encyc. of Law, 522, and cases cited.

Construing all parts of the constitution on this subject together, giving meaning to each clause, we maintain that the plain language of the constitution, without the light of the authorities hereinafter cited, leads to the conclusion that appellee cannot enter upon the property of the appellant until, first, it has paid in money to appellant just compensation for the property taken; second, until this compensation has been determined by a jury of twelve men according to law, if claimed.

The trial by jury—the assessment by a jury of defendant's compensation—is as mandatory as that provision, that just compensation shall first be paid, or that the right of appeal shall not be abridged. If they are all taken together and giving meaning and effect to each part, it is evident *that a just compensation is a jury compensation,* and the appellant cannot be deprived of it, and there can be no taking or entry on appellant's property until such compensation is so assessed "by a jury according to law."—*So. R. Co. v. B. S. & N. O.,* 29 So. Rep. 193; *M. & C. R. R. Co. v. B., S. & T. R. Co.,* 96 Ala. 576; *Smith v. Inge,* 80 Ala. 283; *Ala. Mid. R. Co. v. Newton,* 94 Ala. 443; *Pos. Tel. Cable Co. v. A. G. S. R. R. Co.,* 92 Ala. 311; *Woodward Iron Co.*

*v. Cabaniss,* 87 Ala. 328; *Traction Co. v. Bir. R. Co.,* 119 Ala. 129; *So. R. Co. v. Sayre,* 72 Ala. 443.

The decisions are numerous on the subject, that there can be no taking until a jury has passed upon the assessment of defendant's compensation.—*Woodward v. Cabaniss,* 87 Ala. 329; *Alridge v. Tuscumbia,* 2 S. & P. 217; *So. Ry. v. Sayre,* 72 Ala. 449; *So. Ry. Co. v. B., S. & N. O.,* 29 So. Rep. 193; *M. & C. Ry. v. B. S. & T.,* 96 Ala. 580.

The giving of a bond conditioned to pay such damages as the jury may assess on the trial in the circuit court is not payment of the just compensation as required by the constitution.—*A. & F. R. Co. v. Burkett,* 42 Ala. 89; *M. & C. R. R. Co. v. B., S. & T. R. Co., supra; Aldridge v. Tenn. R.,* 2 S. & P. 217; *Jones v. R. R. Co.,* 70 Ala. 230. It has been expressly held in the cases of *Faust v. Huntsville,* 83 Ala. 279, that a bond is not the payment of compensation as required by the constitution of 1868.

A. D. PITTS and GREGORY L. SMITH, *contra.*—The constitution of 1875 different from the constitution of 1868, provides specially "for preliminary assessment of damages," and also provides that the damages shall be assessed by the jury according to the law on appeal. It only gives the owner the right to have the damages assessed by the jury on appeal. "Many statutes provide a summary mode in which the damages in eminent domain porceedings may be primarily assessed, saving to either party the right to a more deliberate and careful adjudication upon appeal. In order, however, that the work may not be delayed, the party condemning is empowered to take possession of the land and to use and occupy the same pending the appeal; but to this end it is made the duty of such party to deposit in court or with the designated officer the amount assessed. These provisions have very generally been held not to violate the constitutional provisions against the taking of private property without compensation being first made or secured to the owner."—10 Am. & Eng. Encyc. of Law, 1138; *Lake Erie R. Co. v. Kinsey,* 87 Ind. 514; *Peterson v. Ferrebyff,* 30 Iowa, 327; *Central Branch Union*

*Pac. R. Co. v. Atchison R. Co.*, 28 Kan. 453; *Arnold v.
Covington Bridge Co.*, 1 Duv. (Ky.), 372; *Matter of
New York Cent. R. Co.*, 60 N. Y. 116; *Schuler v. North-
ern Liberties R. Co.*, 3 Whart. (Pa.), 555; *Ring v.
Bridge Co.*, 57 Mo. 498; *Meyer v. State*, 125 Ind. 335;
*Meiley v. Zurmehly*, 23 Ohio St., 628; *Oliver v. R. Co.*,
83 Ga. 258.

It has been decided that in eminent domain proceed-
ings a party is not of right entitled to a jury trial, es-
pecially where he has a right of appeal and right to a
jury trial in a higher court.—*Long Island Wat. Co. v.
Brooklyn*, 166 U. S. 694, 695; *Backus v. Fort St. Un.
Dep. Co.*, 169 U. S. 565, 578; *Bauman v. Ross*, 167 U.
S. 592, 599; *Hager v. Reclamation, Etc.*, 111 U. S. 701;
*Huling v. Kaw Valley*, 130 U. S. 599.

Where a statute provides for paying the damages as-
sessed into court it was held that this was legal, like
section 1720, Code of 1896; *Pa. R. R. Co. v. National*,
58 Fed. Rep. 931.

It is clear that the constitution of 1875 only pro-
vides for the assessment by a jury of twelve men on
appeal. It is true that the constitution of 1875 does
say "which compensation shall be paid before such
taking." But if we note we have paid what was as-
sessed by three disinterested citizens possessing the
qualifications of jurors, then we have complied with the
constitution of making payment before entry, and that
that assessment ought to stand until reversed.

When an appeal is taken the party condemning may
deposit in the lower court the amount assessed, and
will then be entitled to take possession of the property
providing there is a statute authorizing possession.
10 A. & E. Enc. of Law (new ed.), p. 1146, and
cases cited in notes.

SHARPE, J.—Complainant made application to the
probate court for condemnation of a railroad right of
way, across a railroad and right of way held by defend-
ant under a lease. Damages were assessed by three
commissioners. The amount assessed was paid into
the probate court and that court made an order of con-

demnation.    The defendant and its lessor appealed
from the assessment to the circuit court.    Complainant
gave bond to pay such judgment as might be rendered
on appeal and attempted to build its road across the
older road.    Complainant brings this bill to enjoin the
defendant from resisting that attempt.    The main ques-
tion raised is whether complainant's right to enter on
the condemned property is postponed by reason of the
appeal; and that question will be solved by determin-
ing whether the proceedings had in the probate court
preclude the defendant to have payment of damages
as they may be ascertained by a jury before the com-
plainant enters.

The statutes relative to eminent domain are domi-
nated by constitutional provisions on the same sub-
ject of which the one particularly applicable is as fol-
lows: "Municipal and other corporations and individu-
als invested with the privilege of taking private prop-
erty for public use, shall make just compensation for
the property taken, injured, or destroyed, by the con-
struction or enlargement of its works, highways, or
improvements, which compensation shall be paid before
such taking, injury, or destruction.    The general as-
sembly is hereby prohibited from depriving any person
of an appeal from any preliminary assessment of dam-
ages against any such corporations or individuals made
by viewers, or otherwise; and the amount of such dam-
ages in all cases of appeal shall, on the demand of either
party, be determined by a jury according to law."
Const. Art. XIV, § 7.    The landowner's right to have
just compensation as a condition precedent to any tak-
ing of his property for public use has been declared in
the foregoing and reiterated in other parts of the con-
stitution in terms so clear as to need no interpretation.
It is not disputed here.    As the amount is of the es-
sence of compensation, the mode of ascertaining what
shall be deemed just is, so far as it is controlled by the
constitution, an essential part of the guaranteed right
of payment which no statute can infringe.

Complainant bases its claim to enter on sections 1719
and 1720 of the Code, the first of which directs that an
order of condemnation be made on payment of damages

as assessed by commissioners, and the later of which is as follows: "Either party may appeal from the assessment of damages and compensation by the commissioners to the city or circuit court of the county within thirty days after the making of the order of condemnation upon the report of the commissioners, by filing in the court rendering the judgment a written notice of appeal, a copy of which shall be served on the opposite party, and on such appeal the trial shall be *de novo;* but no appeal shall suspend the judgment if the applicant shall give bond with good and sufficient surety, to be approved by the judge of probate, to pay such judgment as shall be rendered on appeal." Whether the statute was intended to give the condemnor the privilege of entry on compliance with the conditions prescribed is not clear. The judgment which is not to be suspended, if bond be given, is not enforceable by any process of the probate court. It does not purport to transfer possession nor does the statute in terms declare what effect the judgment shall have other than to fix the status of the property as condemned. In this respect this section of the Code differs from section 1721, which applies in the circuit court and provides, that payment or deposit of the sum assessed by the jury shall "vest in the applicant the easement proposed to be acquired," and that on appeal therefrom to the Supreme Court, a like deposit together with the costs of the proceeding "shall be entitled to enter upon the land so condemned, and survey, construct, and operate on the same for the uses and purposes stated in the application; but such easement shall not vest absolutely in such person, corporation, or association until the final determination of the cause and the payment or deposit in court of such damages and compensation as shall then be adjudged." Where compensation has been assessed in a constitutional mode as by a jury or by the court, if the jury be waived, as may be done under the latter section, and the amount has been paid or deposited for the landowner, the constitution's guaranty is satisfied and the statute may authorize the condemnor's entry pending an appeal from such an assess-

[Southern Ry. Co. v. Birmingham, Selma & New Orleans Ry. Co.]

ment. The difference between the two provisions points to the conclusion that section 1720 was not intended to apply absolutely in all cases.   It may have full operation where the parties acquiesce in the action of commissioners. That parties might so acquiesce and thereby hasten the end of litigation was understood by the authors of the present constitution. To this end they changed the system which under the next preceding constitution had authorized assessment only by jury in the first instance, so as to recognize in the legislature authority to provide for preliminary assessments by viewers and otherwise.    They also understood that such assessments might form an unsafe criterion of value; that when not at a sum sufficient the landowner would need protection and that when exorbitantly large the other party ought likewise to have a remedy. A common law jury was, therefore, designated as the final arbiter to which the parties might resort, and the legislature was prohibited from preventing either party from appealing to a tribunal having such jury and having there the compensation assessed by a jury of twelve men.   To accord to section 1720 the effect of permitting the landowner's disseizin pending his proper efforts to have his damages so ascertained would be to defeat the plainly given right of prepayment. It would compel him to wait on future litigation to obtain the equivalent of property wrested from him, and that at the risk of the taker's insolvency.   The bond required by that section cannot be substituted for prepayment. A necessity to sue for compensation cannot lawfully be imposed on the landowner.   It is extra of the constitutional requirements and its efficacy is referable alone to the restricted legislative power.   In urging that the bond. together with a deposit of the sum assessed by commissioners suffices to allow an entry, complainant relies on an expression found in the opinion delivered in *Cooper v. Anniston, etc. R. Co.,* 85 Ala. 106.   The expression referred to was in substance but a recital of what was contained in a then existing statute, and apparently was made without reference to the question of its constitutionality.   It is not authority for the decision of this case.   We are also referred to

section 580 of Lewis on Eminent Domain where it is said: "Statutes permitting the party condemning to take possession pending an appeal by either party upon making a deposit of the damages awarded are uniformly upheld by the courts. But in the absence of a statute permitting it, the party cannot obtain the right to possession pending an appeal by tendering or depositing the damages awarded." This statement of the law goes on the assumption that the assessment appealed from is such as to meet constitutional requirements, such as were considered in the numerous cases cited by that author. Reports of those cases disclose that they are based on assessments which when made by commissioners or viewers were under constitutions allowing compensation to be merely secured or in other respects differing from ours. The precise point here involved has not been expressly adjudicated by this or any other court so far as our search has extended. Wherever a constitution like ours of 1868 has required prepayment, and designated a jury as the only legal agency for assessing compensation, the courts when called on for construction have held the mode of assessment as inseparably connected with the right of prepayment and as restricting the legislature to that mode.—Lewis on Em. Domain, § 311; Tiedeman's Stat. and Fed. Control Per. and Prop., § 144; *Mont. Etc. R. Co. v. Sayre,* 72 Ala. 443; *Ill. Central R. Co. v. Commrs.* 161 Ill. 247; *Chicago, M. & St. P. R. Co. v. Hock,* 118 Ill. 587; *Jacksonville, Etc. R. Co. v. Adams,* 33 Fla. 608; 24 L. R. A., 272.

As supporting our conclusion that the landowner in this State is protected in his possession so long as he has not had or waived the right to have his compensation assessed by a jury of twelve men, see *Postal Tel. Co. v. A. G. S. R. Co.,* 92 Ala. 331; *Woodward I. Co. v. Cabaniss,* 87 Ala. 328; *M. & C. R. Co. v. Birmingham, etc. R. Co.,* 96 Ala. 571.

In the last cited case it was also well decided that section 21 of Article XIV of the constitution in declaring the right of railroads "to intersect, connect with, or cross any other railroad, does not authorize an invas-

[Loyd v. Guthrie.]

ion of the older right of way without condemnation as in other cases.

The bill is without equity. A decree will be here rendered, reversing the decree of the chancery court, dissolving the injunction issued therefrom, and dismissing the bill. Let the complainant pay the costs in this court and in the chancery court.

TYSON, J., *dissenting.*